# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO,
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO.: 1:14 CR353** |
| | ) | |
| Plaintiff, | ) | **JUDGE DONALD NUGENT** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHRISTOPHER GATTARELLO,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Vicki Lynn Ward (0030905)
75 Public Square, Suite 600
Cleveland, Ohio 44113
Telephone: (216) 696-5880
Facsimile: (216) 241-1312
Email: VickiWard04@yahoo.com

*Attorney for Defendant Christopher Gattarello*

Arthur Bowker
U.S. Pretrial Services & Probation Officer
801 Superior Avenue, West
Cleveland, Ohio 44113
Telephone: (216) 357-7303

*United States Pretrial Services & Probation Department*

Brad Beeson
Assistant United States Prosecutor
Carl B. Stokes Federal Courthouse
801 Superior Avenue, West, Suite 400
Cleveland, Ohio 44113

*Attorney for Plaintiff*

**MEMORANDUM IN SUPPORT**

Christopher Gattarello, by and through undersigned counsel, respectfully submits this Sentencing Memorandum in support of a ruling at the lower end of the 46-57 month range as-negotiated in his Plea Agreement with the government. Such a sentence will reflect the nature and circumstances of Christopher offense, his history and characteristics, and impose a punishment "sufficient, but not greater than necessary" to serve the purposes set forth in Section 3553(a) of Title 18 of the United States Code.

### I. DISCUSSION

**A. Nature and Circumstances of Mr. Gattarello's Offense and His History and Characteristics**

1. The Offense

This case involves an alleged conspiracy of two (2) defendants charged with varying degrees of intent to commit money laundering and Wire Fraud. In addition Mr. Gattarello pled guilty to Failure to Remove Asbestos Prior to Demolition and Failure to Dispose of Asbestos Waste in Violation of Title 42 USC 7413 (c) (1).

2. Mr. Gattarello's History and Characteristics

The Defendant was born on January 31, 1964 and was raised in a two parent household. He attended Chanel and St Joseph's high school but did not graduate. Prior to graduating Christopher's father became ill. He and his brother had to leave school to run the family business, CNT Rubbish Disposal Inc. which was located at 12200 Union Ave., Cleveland, Ohio. It was the family business where Christopher learned and continued in the rubbish business.

In 1985 Christopher married Nancy Ciccarlloa. They later divorced in 1999 but continue to live together. During the marriage Christopher fathered 2 children, a son and a daughter.

1

**Medical Issues**

On or about March 1, 2015 Christopher suffered a devastating traffic accident whereby he was hit by an automobile and then a Semi tractor trailer becoming pinned between a guardrail and a cement barrier wall.  He was blessed to live given the nature of the collision. He did however, suffer extreme serious physical injury.  He suffered a shattered a shattered jaw bone which required oral surgery and the loss of numerous teeth.  He has a had a complete knee replacement and right shoulder replacement.  The shoulder replacement occurred on January 6, 2017.  Shortly thereafter Christopher developed the devastating infection of RSV which affected his entire system.  He was quarantined for almost a week and was in and out of Hillcrest hospital for approximately 30 days minimum.  Christopher also has received a diagnosis from the Spine Institute of Lumbar Stenosis with neurogenic claudication.  This causes severe leg pain and numbness to the point where he can't walk without assistance.  He receives steroid injections in his spine regularly to manage the pain.  Moreover, he has been prescribed close to 20 different medications for the injuries he received as well and for his other serious conditions and illnesses (See Attachments). An overly lengthy prison term could serve to cause deterioration in Christopher's already precarious health condition.

**Legal Framework**

A district court acknowledges the correct calculation of a guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007), but may not treat the range as mandatory or presumptive, *id*. at 51.  *See also Nelson v. United States*, 555 U.S. 350, 352 (2009).  Instead, the sentencing court must consider the tallied guideline range and "one factor among several" that determine an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).  The court must (i) "consider all of the § 3553(a) factors;" (ii) "make an individualized assessment

based on the facts presented," *id*. at 49-50; and, (iii) articulate the relationship of the facts and circumstances of the case to the purposes of sentencing, *id*. at 53-60. *See also Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011). Of course, to fulfill its "overarching" duty, a district court must "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101. *See also Pepper*, 131 S. Ct. at 1242-43.

The United States Supreme Court established the advisory and constitutional nature of the Sentencing Guidelines through its grant of authority to the district courts to disagree with a particular guideline on a policy basis. Specifically, the Supreme Court instructs that, because "the Guidelines are not advisory . . . , as a general matter, courts may vary [from their ranges] based solely on policy considerations, including disagreements with the Guidelines" themselves. *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007)). This latitude extends to all sentencing guidelines. *See, e.g.*, *Vazquez v. United States*, 130 S. Ct. 1135 (2010) (recognizing the validity of then-Solicitor General Elena Kagan's finding that "all guidelines . . . are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a).").

The Sixth Circuit agrees: "*all* of the sentencing guidelines are advisory." *United States v. Michael*, 576 F.3d 323, 327 (6th Cir. 2009) (emphasis in original). Congressional directives "tell[ ] the Sentencing Commission, not the courts, what to do." *Id*. at 328. "[A] directive that the Commission specify a particular Guidelines range is not a mandate that sentencing courts stay within it." *Id*.

3

## II.  CONSIDERATION OF 3553 FACTORS

. With this memorandum, Christopher respectively requests that this Honorable Court impose a sentence at the lower end of the range, based upon, *inter alia*, his full and early acceptance of responsibility, his age and his medical history .

**Given the Nature and Circumstances of Mr. Gattarello's Offense and His History and Characteristics, the Sentence Requested is Sufficient, But Not Greater Than Necessary, to Satisfy the Purposes of Sentencing**.

"[I]t is clear that the district courts have tremendous sentencing discretion in the final determination of the sentence imposed." *United States v. Ortiz*, 502 F. Supp. 2d 712, 715 (N.D. Ohio 2007).  Anthony recognizes and respects this Honorable Court's discretion and only asks that it impose a sentence that is sufficient, but not greater than necessary to punish him.

1. <u>Need For Adequate Deterrence, 18 U.S.C. § 3553(a)(2)(B)</u>

Sentencing serves the purposes of retribution, deterrence, incapacitation, and rehabilitation.  The latter three purposes are prospective and societal and ask: what amount of time and kind of punishment will help to ensure society's safety; whereas, retribution imposes punishment based upon moral culpability.  Recently, retribution has played a dominant role in sentencing determinations.  *See, e.g.*, *Model Penal Code: Sentencing, Tentative Draft No. 1* (Apr. 9, 2007) (noting that "[t]he general purposes of the provisions on sentencing [ ] in decisions affecting the sentencing of individual offenders: to render sentences in all cases within a range of severity proportionate to the gravity of the offenses, the harms done to crime victims, and the blameworthiness of offenders . . .").

4

The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level . . . . While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004). According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis R. Cullen, *et al.*, *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 PRISON J. 48S, 50S-51S (2011).

2. Need For Incapacitation, 18 U.S.C. § 3553(a)(2)(C)

As stated above, given Christopher's age – particularly combined with his precarious health condition should serve as mitigation in sentencing.

**The Requested Sentence Avoids Unwarranted Disparities and Unwarranted Similarities**

The Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The determination of "warranted" disparities requires analysis of the individual circumstances of each case and their relationship to the sentencing purposes. "Unwarranted disparity is defined as different treatment of individual offenders who are similar in relevant ways, or similar treatment of individual offenders who differ in characteristics that are relevant to the purposes of sentencing." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 113 (2004). This Court must also weigh sentencing practices in other courts

5

against the § 3553(a) factors in this case and determine any unwarranted disparity created by the guidelines themselves.  *Kimbrough*, 552 U.S. at 108.

Thus, this Honorable Court should consider a sentence at low end of the guideline sentencing range.

### A. The Sentence Requested Meets the Purposes of Sentencing Under the Circumstances in This Case and Is Consistent with Recent Sixth Circuit Law

Finally, the guidelines require the Court to consider "the kinds of sentences available" by statute.  18 U.S.C. § 3553(a)(3).  The Sixth Circuit has acknowledged this flexibility in sentencing.  *See, e.g.*, *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009); *United States v. Prisel*, 316 F. App'x 377, 380 (6th Cir. 2008).

Thus, based on the factual predicates as set forth in the Indictment and the PSR, Sixth Circuit precedent, his plea, and the Guidelines' directive against disparity, Christopher respectfully requests that the Court impose a sentence that reflects the negotiated agreement between the Government and Mr. Gattarello.

### III. CONCLUSION

For the reasons, law, and argument presented above, this Honorable Court should sentence Mr. Gattarello  to a term of imprisonment and sanctions thereafter that not only reflects the gravity of his crime, but also respects the tenor and rule of law as adopted by the Sixth Circuit and beyond.

Respectfully submitted,

s/ *Vicki Lynn Ward*
Vicki Lynn Ward (0030905)
75 Public Square, Suite 600
Cleveland, Ohio 44113
Telephone: (216) 696-5880
Facsimile: (216) 241-1312
Email: VickiWard04@yahoo.com

*Attorney for Defendant Christopher Gattarello*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 30, 2107 had served a copy of the *Defendant's Sentencing Memorandum* to all parties to this matter through the Court's electronic filing system.

*/s / Vicki Lynn Ward*
Vicki Lynn Ward